In the Matter of BEACH RESORT HO-
TEL CORPORATION, a Florida
corporation, Debtor.
No. 3152–M.

United States District Court
S. D. Florida, Miami Division.
May 15, 1956.

Harold Friedman, Feibelman & Friedman, Miami, Fla., for debtor.

W. G. Ward, Ward & Ward, Miami, Fla., for Abraham Rosen and other creditors.

Paul G. Hyman, Britton, Hodges & Hyman, Miami, Fla., for trustee.

Milton M. Ferrell, Miami, Fla., for Yetta Rosen.

Stanley C. Myers, Myers, Heiman & Kaplan, Miami, Fla., Marion E. Sibley, Sibley & Davis, Morris Berick, Miami Beach, Fla., for Bernard R. Wieder, Joseph Amigo and Palwi, Inc.

LIEB, District Judge.

This matter came on for hearing before the Court upon exceptions filed by the parties hereto to the report of the Honorable L. Earl Curry, referee in bankruptcy, serving as Special Master, which report is dated January 30, 1956. Petitions for review of an order of the Honorable L. Earl Curry, referee in bankruptcy, dated February 8, 1956, have also been filed by two of the parties. The referee has certified the file and all questions to the Court.

In the said report of the Special Master certain findings and recommendations were made with reference to an accounting had between the debtor, Beach Resort Hotel Corporation, and its lessee, Palwi, Inc., a corporation. On the matter for review, the said order of the referee purported to vacate an injunction entered by this Court on June 24, 1955, which had enjoined Bernard R. Wieder and Joseph Amigo, as plaintiffs, and Palwi, Inc., Yetta Rosen and Milton Weiss, as defendants, in that certain cause No. 175946–C then pending in the Circuit Court of the Eleventh Judicial Circuit, in and for Dade County, Florida, from prosecuting or continuing the said action until the further order of this Court.

These proceedings arise under Chapter X of the National Bankruptcy Act.[1] On January 7, 1955, Beach Resort Hotel Corporation, a Florida corporation (referred to herein as the debtor) filed in this Court its petition for corporate reorganization. On the same date this Court, by order of Judge Holland, approved the said petition as complying with the statutory requirements including a finding of good faith, appointed a trustee for the debtor, and enjoined all persons, firms and corporations from commencing or continuing any civil actions against the debtor or any of its property. On June 24, 1955, this Court,

1.  11 U.S.C.A. § 501 et seq.

by Judge Holland, entered an order referring to L. Earl Curry, referee in bankruptcy, as Special Master, the matter of accounting between the debtor and Palwi, Inc. On the same date, Judge Holland entered the injunction enjoining Bernard R. Wieder, et al., referred to above. This latter injunction enjoined the parties mentioned from continuing in the Circuit Court of Dade County, Florida, a suit which had been brought to dissolve the said Palwi, Inc., which was the lessee of property involved in these proceedings.

On October 4, 1955, additional directions were given to the said referee as Special Master by Judge Whitehurst, of this Court, authorizing the Special Master to consider whether or not the proceedings for reorganization in this case were instituted and being maintained in good faith. The said order of Judge Whitehurst authorized the parties to assert before the Special Master any claims they might have that any previous decisions of the State Courts of Florida were *res adjudicata* of any of the issues which had been referred by this Court to the referee, as Special Master, for determination.

As background in these proceedings, it is noted that the debtor corporation has as its only asset the Surfside Plaza Hotel, in Miami Beach, Florida. In the petition for reorganization it is alleged that the value of the hotel was in excess of $1,-000,000, and that it was subject to several mortgages and certain receiver's certificates then outstanding, the total amount of such encumbrances being approximately $565,000.

On August 28, 1951, the debtor corporation entered into a written lease of the said hotel to Palwi, Inc., a Flordia corporation (hereafter referred to as lessee). This lease was for a term of 5 years, commencing with the date of the lease at a total rental of $500,000, payable in specified installments. The lease included an option of renewal upon the same terms for an additional 5 years, providing the option was exercised during a period when the lease was not in default.

The principal difficulty in this matter arises out of a conflict between the parties as to the legal effect of certain provisions of the lease and the legal effect of the conduct of the parties in attempting to carry out those provisions.

At the time the lease was made it was contemplated by the parties thereto that certain improvements should be undertaken with respect to the hotel property. To provide for such improvements, the lease included a section entitled "Lessee's Obligation to Make Improvements", which reads as follows:

"The Lessee agrees that it will, as soon as it is permitted to do so by the competent governmental authorities, install and build a new swimming pool in accordance with a sketch of the same which is hereto attached and made a part hereof and will erect ten (10) cabanas and cabana deck in accordance with a sketch of the same which is hereto attached and made a part hereof, and will install a central air conditioning system of the kind and type as may be agreed upon by the parties hereto and will tile all guest bathrooms in accordance with a sketch which is attached hereto, will redecorate the lobby by refurnishing the same either with new furniture or reupholstering the existing furniture, by repainting, and by installing new drapes and rugs and by doing such other things as may be necessary to give the said lobby a pleasing and inviting appearance. The Lessee will modernize the front and ocean side entrances of the building in accordance with a sketch of the same attached hereto.

"Notwithstanding the fact that the Lessee undertakes to accomplish the above improvements as soon as it is possible to do so, the parties agree that at such time as the Lessee has spent for such improvements the sum of Ninety thousand ($90,-

000.00) Dollars, it shall not be required to continue with such improvements, excepting only as the money for such improvements becomes available from the net proceeds of the hotel, and the Lessee shall not be required to furnish additional money in excess of the sum of Ninety thousand ($90,000.00) Dollars just above referred to, other than that money which may be obtained from the net proceeds of the hotel operation or which may be obtained by financing which can be repaid out of the net proceeds of the hotel operation, and providing further that the total amount of money to be expended by the Lessee as hereinabove provided, shall not be more than Two hundred thousand ($200,-000.00) Dollars.

"At such time as the improvements are made and completed, they shall immediately become the sole and exclusive property of the Lessor and shall be returned unto the Lessor upon the expiration date of this lease agreement, free from any lien of any kind or nature whatsoever so far as any of the actions of the Lessee are concerned."

Subsequent to the execution of the lease the lessee, Palwi, Inc., went into possession of the hotel and improvements were made to the hotel property which cost much in excess of the contemplated $200,000. While the improvements were being made, difficulties arose between the lessor and the lessee resulting in the institution of a suit in the Circuit Court of Dade County, Florida, being cause No. 145889–C. In this suit Wieder and Amigo, who owned half of the stock of the lessee Palwi, Inc., were plaintiffs against the lessor corporation, Beach Resort Hotel Corporation, Abraham Rosen, sole stockholder of the lessor corporation, Palwi, Inc., the lessee, and Yetta Rosen and Milton Weiss, directors of Palwi, Inc., as defendants. This suit prayed for the appointment of a receiver of the hotel property and for an accounting between the parties. The Circuit Court appointed a receiver and in order to complete the unfinished improvements, authorized the receiver to issue receiver's certificates in the amount of approximately $200,000. These certificates were later refinanced and the amount was increased to $225,000. These receiver's certificates remain unpaid.

In the course of the proceedings in the said suit in the Circuit Court of Dade County a final decree was entered on October 23, 1952, which in part held that the lease had not been breached by the lessee, and that all costs of improvements specified in the lease in excess of the sum of $90,000, which had been paid by the lessee on such improvements, was the obligation of the lessor, subject, however, to the right of the lessor to be repaid an additional $110,000 from the net proceeds of the lessee's operation of the hotel under the lease. The decree further held that the receiver's certificates were a lien upon interests of each of the parties and were the primary obligation of the lessor. This final decree was appealed to the Supreme Court of Florida and was affirmed without opinion.[2]

On December 30, 1953, an "Order Supplemental to Final Decree" was entered by the Circuit Court in the said suit by which order the Court made a determination on the accounting which had been conducted by the Court as to the mutual obligations of the parties to the lease. Certiorari on this order was taken to the Supreme Court of Florida by the Beach Resort Hotel Corporation. On February 25, 1955, the Supreme Court on certiorari quashed the order of the Circuit Court dated December 30, 1953, and directed the Lower Court to make an accurate determination of the amount of permanent improvements from which the lessor corporation would benefit and restrict the lessor's liability to those improvements, plus only those other improvements specifically found to have

2. Beach Resort Hotel Corp. v. Wieder, Fla.1953, 66 So.2d 65.

been separately contracted for by the lessor.[3]

Although the order of Judge Holland dated January 7, 1955, did not specifically refer to any court, it did enjoin all of the parties to the accounting suit in the State Court from proceeding with any suit affecting the property of the debtor. Despite this injunctive order, the Supreme Court of Florida thereafter, on February 25, 1955, proceeded to decide the petition for writ of certiorari and thereafter, on July 26, 1955, the Circuit Court proceeded to enter an "Order or Decree on Mandate" again purporting to determine what was a proper accounting in the case. Some of the parties took certiorari from the last mentioned order to the Supreme Court of Florida, which further purported to consider the matter, and entered an order on December 14, 1955, denying certiorari from the Lower Court's decree on mandate.[4]

The order of Judge Holland, of this Court, dated June 24, 1955, ordered the referee, as Special Master, to proceed to take an accounting between the lessor and the lessee on all matters arising under the lease of the hotel. This in effect was a direction to take a new accounting without regard to the previous accounting had in the State Courts, although Judge Holland in his order did direct the attention of the Special Master to the opinion of the Supreme Court of Florida in 79 So.2d 659.

The findings of the Special Master upon this accounting had by him are the subject matter of the exceptions under consideration. In the finding of the referee, as Special Master, in his said report dated January 30, 1956, the referee found, among other things, that the question of good faith in these reorganization proceedings had been decided by the order of Judge Holland dated June 24, 1955; that under the lease the lessee was not in default for rent or for any payments due by the lessee to the lessor on the improvements required by the lease. The report further found that as of August 19, 1956, the date of expiration of the first 5 year term of the lease, there would be due and payable from the lessee to the lessor the sum of $144,232.-74, which included $55,238.04 as the lessee's share of the costs of the receivership in the State Court.

The exceptions to the Master's report filed by Palwi, Inc., Bernard R. Wieder and Joseph Amigo are based, inter alia, upon the following claims warranting discussion:

a. that the referee erred in failing to find that the proceedings under Chapter X were not instituted and maintained in good faith;

b. that the referee erred in failing to find that the decisions of the Court of Florida were res adjudicata.

The exceptions to the Master's report filed by the debtor and certain stockholders and creditors of the debtor raised, inter alia, the following objections which warrant discussion:

a. that the amount found to be due by the lessee to the lessor is incorrect;

b. that the Special Master was in error in finding that no amount would be due from the lessee to the lessor until the expiration of the first period of the lease, or August 19, 1956;

c. that the referee was in error in finding that the lessee was not in default in the payment of rent.

The petitions for review of the order of the referee vacating the injunction against further prosecution of the case of Wieder, et al., v. Palwi, Inc., et al., Chancery No. 175946–C in the Circuit Court of Dade County, Florida, filed by Abraham Rosen and other creditors and stockholders of the debtor and by J. J. Perlmutter, trustee of the debtor in these proceedings, contend that the referee erred in vacating the said injunction.

With respect to the matters raised in the various objections to the

---

3. Beach Resort Hotel Corp. v. Wieder, Fla.1955, 79 So.2d 659.

4. Beach Resort Hotel Corp. v. Bernard Wieder, Fla.1955, 83 So.2d 863.

report of the Special Master on the accounting between the parties, the Court has first considered whether the referee was correct in holding that the petition for reorganization was filed in good faith and that the subsequent proceedings upon said petition were maintained in good faith. The referee found that Judge Holland by his order of June 24, 1955, had settled the question of good faith. Actually, Judge Holland by approving the petition of the debtor in his order of January 7, 1955, held that the petition was filed in good faith. The question of good faith may be reviewed at any time and Judge Whitehurst specifically requested the referee to consider the objections of certain of the parties that the proceedings were not filed and maintained in good faith. It is the opinion of this Court from a study of the record that the petition was filed in good faith and has been since maintained in good faith and this exception to the Master's finding is overruled.

As to the matter of the applicability of any decisions of the State Courts of Florida to these proceedings and the effect of any such orders, decrees, or decisions as *res adjudicata* on any issues involved in these proceedings, it appears that the order of Judge Holland dated January 7, 1955, contained an injunction restraining all the parties in these proceedings from commencing or continuing any civil action or proceeding against the debtor or any of its property.

It is contended by Palwi, Inc., and Amigo and Wieder that the order of the Circuit Court of Dade County, Florida, dated July 26, 1955, and entitled "Order or Decree on Mandate" was lawfully entered and was binding upon the parties.

On the other hand, Abraham Rosen, sole owner of the debtor and several creditors of the debtor contend that the order of the Supreme Court of Florida dated February 25, 1955, which quashed the original decree of the Circuit Court upon the accounting in the State Court, was a valid order and binding upon the parties to these reorganization proceedings. They further contend that the order of the Circuit Court on the mandate dated July 26, 1955, and the subsequent order of the Supreme Court of Florida on certiorari were invalid. It will be remembered that the order of the Supreme Court dated February 25, 1955, the order of the Circuit Court dated July 26, 1955, and the order of the Supreme Court on certiorari dated December 14, 1955, were all issued after Judge Holland's injunctive order of January 7, 1955, in the reorganization Court.

The decree of the Circuit Court dated October 23, 1952, and affirmed by the Supreme Court of Florida on June 26, 1953,[5] before the injunction is *res adjudicata* of the matters there decided.

The decree in equity of the Circuit Court of Dade County, dated December 30, 1953, which was on appeal to the Supreme Court of Florida at the time of Judge Holland's injunction issued on January 7, 1955, was not *res adjudicata* of any of the issues involved in these proceedings.[6]

The orders and decrees of the Circuit Court and the Supreme Court of Florida entered after the said injunction do not constitute *res adjudicata* of any of the issues involved herein.

Under § 111 of Chapter X of the National Bankruptcy Act[7] it is provided:

"Where not inconsistent with the provisions of this chapter, the court in which a petition is filed shall, for the purposes of this chapter, have exclusive jurisdiction of the debtor and its property wherever located."

5. Beach Resort Hotel Corp. v. Wieder, Fla.1953, 66 So.2d 65.

6. Restatement of the Law, Judgments, § 41(d); see also 9 A.L.R.2d 994 (§ 5);

and Tampa Waterworks Co. v. City of Tampa, C.C.S.D.Fla., 124 F. 932, 1903.

7. 11 U.S.C.A. § 511.

And in § 116 of the Chapter [8] it is provided that:

"upon the approval of the petition, the Judge may * * *

"(4) * * * enjoin or stay until final decree the commencement or continuation of a suit against the debtor or its trustee or any act or proceeding to enforce a lien upon the property of the debtor."

■ By the order of Judge Holland dated January 7, 1955, all parties to these proceedings were lawfully enjoined from:

"commencing, or continuing any civil action, proceeding a process, or any administrative proceeding against the debtor or any of its property; or from in any wise, obstructing or interfering with the exclusive possession or right of possession of or to the debtor's property by the trustee herein. * * *"

It was immaterial whether or not such parties were served with the injunctive order. It is a caveat to the world.[9]

■ To accomplish the complete stay of any proceedings against the debtor or its property in the State Court it was not necessary to enjoin that Court itself. Such action should rarely if ever be taken by a Federal Court in reorganization proceedings. An injunction against the parties involved in the State Court proceedings is the proper method to obtain such relief.[10]

■ Where a petition for corporate reorganization has been filed and the Court in those proceedings has enjoined the parties from litigating rights in the debtor's property in any other Court, the United States Court has exclusive jurisdiction and no other Court may make any valid orders, judgments or decrees affecting the debtor's property without consent of the United States Court.

■ In these proceedings the orders of the State Courts entered after the injunction herein were void and may be ignored.[11]

■ It was contended by Palwi, Inc., and Wieder and Amigo in these proceedings, that Judge Holland had exempted from his injunction the suit for receivership and accounting, brought by Wieder and Amigo against both the lessor and lessee and others, which was then pending on appeal before the Supreme Court of Florida. They claimed that Judge Holland specifically requested the State Court to adjudicate, in that suit, the issues involved in these proceedings, by virtue of the following language appearing in one of his orders dated January 24, 1955:

"It is the understanding of this Court that the Circuit Court has before it a report upon which certain payments are to be fixed which are to be paid to the debtor corporation, under a Release [sic] between it and Palwi, Inc., and said Court is hereby respectfully authorized and requested to rule upon said report, determine the amounts due the debtor corporation, and direct and fix the time of payment to Julius Jay Perlmutter, the trustee herein."

It was this language of Judge Holland's order that was the basis of the opinion of the Supreme Court of Florida, on certiorari dated December 14, 1955,[12] purporting to find that Judge Holland had requested the Circuit Court of Dade County to continue to act despite the injunction against the parties.

8. 11 U.S.C.A. § 516.

9. Zeleznik v. Grand Riviera Theater Co., 6 Cir., 1942, 128 F.2d 533.

10. In re Mt. Forest Fur Farms of America, 6 Cir., 1939, 103 F.2d 69.

11. First National Bank in Houston, Texas v. Lake, 4 Cir., 1952, 199 F.2d 524, certiorari denied, 1953, 344 U.S. 914, 73 S.Ct. 337, 97 L.Ed. 705; In re Long Island Properties, D.C.S.D.N.Y.1941, 40 F.Supp. 611, and cases cited therein; adhered to in D.C.S.D.N.Y.1941, 42 F. Supp. 323.

12. Beach Resort Hotel Corp. v. Wieder, Fla.1955, 83 So.2d 863.

It is clear from a study of the full text of the said order of Judge Holland and the proceedings had in the State Court immediately thereafter, that the quoted language in Judge Holland's order related only to a certain sum of $36,-872.93 reported by the State Court Receiver, Orovitz, and that it was intended only that the State Court should pay its receiver and his attorney and also pay certain fixed charges then due, remitting any balance to the Federal Court Trustee.

Pursuant to this understanding of the order by the parties, and apparently by Judge Milledge of the Circuit Court, the receiver and his attorney immediately filed petitions in the State Court for fee allowances and they were ordered to be paid by Judge Milledge. The Circuit Court declined to do anything concerning the fixed charges against the debtor's property, and Judge Milledge entered an order on March 1, 1955, reciting that after discussing the matter with all parties including the trustee, the State Court would not handle the payment of the fixed charges and that in the opinion of the Court "it would be best for the Judge of the United States Court to determine what payments should be made thereon."

Thereupon the Circuit Court directed its receiver to retain $20,000 and pay to the trustee herein the balance of the fund, amounting to $16,872.93.

It is unreasonable to assume that in view of the said order of Judge Milledge and the subsequent orders of Judge Holland authorizing a full accounting in this Court, that any delegation of power to make such general accounting was ever given to the State Court.

Furthermore, counsel for Palwi, Inc., in hearings held on these exceptions and in their brief have now admitted that Judge Holland never intended to make such delegation.

The contention that the trustee became bound by the decision of the State Court by reason of participation by him in those proceedings after the injunction of Judge Holland is also without merit.

After the petition was approved in these proceedings, the property of the debtor passed to the trustee. Any further participation in the State Court proceedings by the sole stockholder of the debtor did not affect the status of the trustee.

A careful study of the record in this case shows that the trustee had nothing to do with the proceedings leading to any decision of the Supreme Court of Florida or of the alleged "Decree on Mandate" dated July 26, 1955. After that decree was filed, the trustee filed, on August 5, 1955, in the Circuit Court of Dade County a separate suggestion to that Court specifically pointing out that he did not submit himself to the jurisdiction of that Court but was appearing specially for the sole purpose of pointing out to the Court the continued existence of these proceedings.

By the order of Judge Holland, dated January 24, 1955, the trustee was requested to confer with the Judge of the Circuit Court as to the distribution of funds in the hands of the receiver, Orovitz, and he did so. The record fails to show that the trustee ever recognized any right of the State Court to conduct the accounting, or to settle any of the issues involved in these proceedings.

As noted above, the referee, as Special Master, found that under the accounting had (which covered the first four years of the lease up to and including August 31, 1955), there was no unpaid rent due to the trustee of the debtor.

He also found that of the improvements specified to be made under the lease, there remained unpaid by the lessee, on its share of such expense, the sum of $82,115.30 which sum should be paid out of any profits of the operation of the hotel during the remainder of the term of the lease. The Court approves of this finding, except that the said sum should be paid out of net proceeds, if any, from the operation of the hotel, rather than out of profits.

It was further found by the referee, as Special Master, that the lessee owes to the lessor herein the sum of $144,-

232.74, which includes $55,238.04, or one-half of the cost of the receivership proceedings.

A study of the accounting evidence indicates the correctness of the procedure followed and the amount found to be due. However, there appears to be no reason why the amount found to be due by the lessee to the lessor should not be due and payable before August 19, 1956.

The Court, therefore, overrules all exceptions to the findings of the referee, as Special Master, and the Court adopts such findings, except that the Court finds that the sum of $144,232.74, owed by the lessee to the lessor, is now due and payable.

The order of the referee vacating the injunction in the suit of Wieder, et al. v. Palwi, Inc., recites that the "said Restraining Order" is dated December 16, 1955. This is in error as the true date of Judge Holland's injunction is June 24, 1955. It appears to the Court that the said injunction should be continued in force for the proper administration of the estate of the debtor and, therefore, the petitions for review of the referee's order are granted, the referee's order of February 8, 1956, is reversed, and the injunction is continued in full force and effect.