E. Howard HUNT, Jr., Appellant,

v.

**LIBERTY LOBBY, INC.**

No. 82–1787.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 30, 1983.

Decided May 13, 1983.

As Amended May 26, 1983.

William A. Snyder, Jr., Baltimore, Md., for appellant.

Fleming Lee, Arlington, Va., for appellee.

Before MacKINNON and WALD, Circuit Judges, and BAZELON, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge MacKINNON.

MacKINNON, Circuit Judge:

E. Howard Hunt, Jr. appeals from an order of the United States District Court for the District of Columbia, which dismissed his complaint seeking to obtain a local judgment on a judgment obtained in an action for libel and defamation in the United States District Court for the Southern District of Florida. The district court here dismissed the complaint on the ground that an appeal from the judgment of the Florida court was pending before the United States Court of Appeals for the Eleventh Circuit. We reverse.

## I. BACKGROUND

Appellee Liberty Lobby, Inc., a not-for-profit corporation organized under the laws of the District of Columbia, publishes a weekly newspaper called *The Spotlight.* The newspaper printed an article that apparently linked convicted Watergate conspirator E. Howard Hunt with the assassination of President Kennedy.[1] Hunt filed a civil action for libel against Liberty Lobby in the United States District Court for the Southern District of Florida. Following a jury trial, Hunt was awarded $100,000 compensatory and $550,000 punitive damages. *Hunt v. Liberty Lobby, Inc.,* No. 80–1121 (S.D.Fla. Dec. 28, 1981). Liberty Lobby appealed to the Eleventh Circuit.

Liberty Lobby also filed a posttrial motion in the district court to stay the judgment pending appeal. Representing that it was unable to meet the cost of a supersedeas bond, Liberty Lobby asked the trial court, pursuant to Rule 62(d) of the Federal Rules of Civil Procedure and Rule 8 of the Federal Rules of Appellate Procedure, to grant a stay of proceedings in the absence of a supersedeas bond or, in the alternative, to condition a stay of the judgment on an arrangement for substitute security. The trial court denied the motion without prejudice to Liberty Lobby's right to obtain a stay by posting a supersedeas bond. *Hunt v. Liberty Lobby, Inc.,* No. 80–1121 (S.D. Fla. Mar. 30, 1982) (R.E., Ex. 1).[2]

Armed with a Certification of Judgment for Registration in Another District,[3] Hunt then brought the present action against Liberty Lobby in the United States District Court for the District of Columbia to obtain a local judgment upon which he could levy execution in the District of Columbia, where Liberty Lobby's principal assets are located. Liberty Lobby responded with a motion to dismiss the complaint on the grounds (1) that the Florida court lacked in personam jurisdiction over Liberty Lobby, (2) that the Florida judgment was not *res judicata* because an appeal was pending, and (3) that the complaint failed to state a claim for which relief could be granted. (R.E., Ex. 2). The district court granted the motion to dismiss on the ground that the Florida judgment was on appeal. The dismissal was without prejudice, however, with leave to reopen upon the resolution of the appeal before the Eleventh Circuit. *Hunt v. Liberty Lobby, Inc.,* No. 82–1018 (D.D.C. June 8, 1982) (R.E., Ex. 4). Hunt's subsequent motion for reconsideration was denied. *Hunt v. Liberty Lobby, Inc.,* No. 82–1018 (D.D.C. July 2, 1982) (R.E., Ex. 7). This appeal followed.

1. The precise nature of the allegations in the article is controverted. Appellant characterizes the article as having "accused [Hunt] of complicity in the assassination of President Kennedy." Brief for Appellant at 3. Liberty Lobby, on the other hand, describes the article as reporting "that the CIA would like to make Hunt a scapegoat by saying that he had been in Dallas, Texas on the day of President Kennedy's assassination." Brief for Appellee at 4. We have before us neither a copy of the article nor the record in the action before the Florida district court.

2. "R.E." refers to the Record Excerpts submitted to the court by the parties to this appeal.

3. The Certification was issued by the Clerk of Court for the Southern District of Florida on April 2, 1982. (R.E., Ex. 1).

## II. Issues Raised on Appeal

Hunt raises two issues. First, he contends that Liberty Lobby is collaterally estopped from contesting the Florida court's exercise of in personam jurisdiction. Second, he argues that the district court here erred in dismissing his action on the Florida judgment, which he maintains is *res judicata* in his present action. We consider each issue in turn.

### A. *Relitigating in personam jurisdiction.*

We need not linger over this issue, since it is not properly before us. There is no indication in the record of the case now under review that the district court for the District of Columbia ever reached the question of the Florida court's jurisdiction. The wording of the district court order makes clear that the court based its decision solely on the pendency of the appeal before the Eleventh Circuit from the Florida judgment, *i.e.:*

> Upon consideration of defendant's motion to dismiss and plaintiff's opposition thereto, and it appearing that the case on which judgment is sought ... is presently before the newly created United States Circuit Court of Appeals for the Eleventh Circuit, it is, this 7 day of June, 1982,
>
> ORDERED that the defendant's motion be, and the same hereby is granted, and it is further
>
> ORDERED that the instant case be, and the same hereby is dismissed without prejudice, with leave to reopen upon the resolution of the appeal.

*Hunt v. Liberty Lobby, Inc.,* No. 82–1018 (D.D.C. June 7, 1982) (R.E., Ex. 4). Moreover, the district court *could not* have reached the jurisdictional question in any event, since there was no record before it upon which to decide whether the question had been fully and fairly litigated before the Florida court. Consequently, the jurisdictional issue is premature.

Because we reverse the decision on other grounds, *see* Part IIB *infra,* the parties may address the jurisdictional issue on remand. We express no opinion on the merits of Liberty Lobby's challenge to the jurisdiction of the Florida court over it, but we would note that a collateral attack on an exercise of in personam jurisdiction is sharply limited to an inquiry into the fullness and fairness with which the jurisdictional issue was litigated. *See Durfee v. Duke,* 375 U.S. 106, 111, 84 S.Ct. 242, 245, 11 L.Ed.2d 186 (1963); *Fidelity Standard Life Insurance Co. v. First National Bank & Trust Co.,* 510 F.2d 272, 273 (5th Cir.1975) (per curiam) (summary calendar). There can be no inquiry into the merits of the Florida court's exercise of jurisdiction.[4] *See Scherrer v. Scherrer,* 334 U.S. 343, 348, 68 S.Ct. 1087, 1089, 92 L.Ed. 1429 (1948).

### B. *The* res judicata *effect of the judgment pending appeal.*

#### 1. *Choice of law*

The district court dismissed Hunt's complaint based on the Florida judgment because it is on appeal. The dismissal rests on

---

4. Judge MacKinnon (but not the other judges) would note the following: Appellee's assault on the jurisdiction of the Florida court draws its support exclusively from cases assessing the "minimum contacts" of corporations organized to make a *profit*—e.g., New York Times Co. v. Connor, 365 F.2d 567 (5th Cir.1966); *Buckley v. New York Times Co.,* 338 F.2d 470 (5th Cir.1964). However, the measure of "minimum contacts" necessary to comport with due process may differ for a corporation whose *raison d'etre* is not to generate profits but to convey information in order to secure adherents to its position on various public issues. It may well be that such factors as circulation revenues and advertising solicitations are less material in determining whether Liberty Lobby had sufficient contacts within the state of Florida to support jurisdiction than those factors would be if *The Spotlight* were a newspaper published for profit like the *The New York Times.* The more likely jurisdictional test for a not-for-profit corporation like Liberty Lobby would turn not on revenues but on the extent of distribution, for distribution is the objective of the publisher. Thus, it bears noting that Liberty Lobby concedes that during the relevant time period 270,000 copies of *The Spotlight* were distributed annually to some 5,300 subscribers in Florida, who pay a total of $84,800 for their subscriptions. *See* Memorandum in Support of Liberty Lobby, Inc.'s Motion to Dismiss at 4, 5 (R.E., Ex. 2).

the premise that the judgment is not *res judicata* pending appeal. As we hold below, precisely the opposite is the long-standing rule in the federal courts. Appellee, however, insists the premise must be tested by reference to state, not federal, law. Brief for Appellee at 9. Consequently, we must first decide whether a federal court in a diversity case must apply federal or state law of *res judicata* in determining the effect of a judgment rendered by another federal court in an action based on diversity.

The question was expressly left open by the Supreme Court in *Heiser v. Woodruff,* 327 U.S. 726, 731–32, 66 S.Ct. 853, 855, 90 L.Ed. 970 (1946). Though it is an issue of first impression in this circuit, the Second and Fifth Circuits have concluded that the federal law of *res judicata* controls. *See Kern v. Hettinger,* 303 F.2d 333, 340 (2d Cir.1962); *Aerojet-General Corp. v. Askew,* 511 F.2d 710, 715–18 (5th Cir.) ·(dictum), *appeal dismissed,* 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975). In reaching the same conclusion, we join a burgeoning majority of federal courts. *See* 1A J. Moore, Moore's Federal Practice ¶ 0.311[2], at 3179–83 & n. 28 (2d ed. 1982) (hereinafter referred to as "Moore's Federal Practice").

Under *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), a federal court in a diversity case must apply state substantive law to the controversy before it. But it is clear that the considerations central to the *Erie* doctrine are not implicated by application of federal law to the *res judicata* issue in this case. Because a rule governing the *res judicata* effect of a judgment pending appeal affects only the timing of recovery, the rule can scarcely be described as bound up with the definition of the rights and obligations of the parties under Florida libel law. *See Byrd v. Blue Ridge Rural Electric Cooperative, Inc.,* 356 U.S. 525, 536, 78 S.Ct. 893, 900, 2 L.Ed.2d 953 (1958). Nor could application of federal law to the issue before us have any substantial bearing on whether the litigation would come out one way in the federal court and another way in the state court. *Guaranty Trust Co. v. New York,* 326 U.S. 99, 110, 65 S.Ct. 1464, 1470, 89 L.Ed. 2079 (1945). In deciding whether to hail Liberty Lobby before the federal or the state court in Miami, Hunt was not presented with a situation where application of the state rule would "wholly bar recovery." *Hanna v. Plumer,* 380 U.S. 460, 469, 85 S.Ct. 1136, 1142, 14 L.Ed.2d 8 (1965). As a result, there is little likelihood that our ruling will encourage forum shopping.

But even if the policy of uniform enforcement of state-created rights and obligations were implicated by our ruling, "there are affirmative countervailing considerations at work here. The federal system is an independent system for administering justice to litigants who properly invoke its jurisdiction." *Byrd v. Blue Ridge Rural Electric Cooperative, Inc., supra,* 356 U.S. at 537, 78 S.Ct. at 900. We are persuaded by the analysis of Judge Medina, who pointed out that one of the strongest policies "an independent system" can have is that of determining the scope of its judgments:

> It would be destructive of the basic principles of the Federal Rules of Civil Procedure to say that the effect of a judgment of a federal court was governed by the law of the state where the court sits simply because the source of federal jurisdiction is diversity. The rights and obligations of the parties are fixed by state law. These may be created, modified and enforced by the state acting through its own judicial establishment. But we think it would be a strange doctrine to allow a state to nullify the judgments of federal courts constitutionally established and given power also to enforce state created rights. The Erie doctrine ... is not applicable here.

*Kern v. Hettinger, supra,* 303 F.2d at 340 (for Friendly & Smith, J.J.). Speaking for the court in *Aerojet-General Corp. v. Askew, supra,* Judge Ainsworth echoed these concerns:

> If state courts could eradicate the force and effect of federal court judgments through supervening interpretations of the state law of res judicata, federal

courts would not be a reliable forum for final adjudication of a diversity litigant's claims.

511 F.2d at 716 (dictum); *accord* 1A Moore's Federal Practice, *supra,* ¶ 0.311[2], at 3182.

■ We hold, therefore, that the federal court in exercising its diversity jurisdiction here shall apply federal rules of *res judicata* in determining the effect to be given the judgment rendered by the federal court in Florida exercising diversity jurisdiction. Such holding comports with well-reasoned precedent from other circuits.[5] *See, e.g., Aerojet-General Corp. v. Askew, supra; Kern v. Hettinger, supra;* 1A Moore's Fed-

eral Practice, *supra,* ¶ 0.311[2], at 3182–83 and cases cited at 3181 n. 28. Accordingly, we rule that the enforceability of Hunt's foreign judgment shall be determined by reference to federal, not Florida, law.[6]

### 2. The federal rule

■ Under well-settled federal law, the pendency of an appeal does not diminish the *res judicata* effect of a judgment rendered by a federal court. *See Huron Holding Co. v. Lincoln Mine Operating Co.,* 312 U.S. 183, 188–89, 61 S.Ct. 513, 515–516, 85 L.Ed. 275 (1941) (dictum); *Reed v. Allen,* 286 U.S. 191, 199, 52 S.Ct. 532, 533, 76 L.Ed.

---

5. Courts of the Third Circuit alone have concluded that state law should govern issues of *res judicata* in consecutive diversity actions. *E.g., Murphy v. Landsburg,* 490 F.2d 319, 322 n. 4 (3d Cir.1973), *cert. denied,* 416 U.S. 939, 94 S.Ct. 1941, 40 L.Ed.2d 289 (1974); *Gambocz v. Yelencsics,* 468 F.2d 837, 841 n. 4 (3d Cir.1972) (dictum); *Provident Tradesmens Bank & Trust Co. v. Lumbermens Mutual Casualty Co.,* 411 F.2d 88, 94 (3d Cir.1969); *Makariw v. Rinard,* 336 F.2d 333, 334 (3d Cir.1964); *see Blum v. William Goldman Theatres, Inc.,* 174 F.2d 914, 915–16 (3d Cir.1949). The courts in *Murphy, Gambocz, Provident Tradesmens,* and *Makariw* merely noted that jurisdiction was based on diversity and then applied state law without undertaking any analysis of *Erie* principles. *See Aerojet-General Corp. v. Askew, supra,* 511 F.2d at 716. The *Blum* court, as Professor Moore has observed, erroneously characterized an issue of the law of the case as one of *res judicata.* 1A Moore's Federal Practice, *supra,* ¶ 0.311[2], at 3181 n. 28. The Third Circuit cases might also be explained as instances of filiopietistic adherence to *Hartmann v. Time, Inc.,* 166 F.2d 127, 138 (3d Cir.1948), which decided the question without the benefit of the Supreme Court's subsequent interpretations of the *Erie* doctrine in *Byrd* and *Hanna.* Without presuming to predict what the Third Circuit might hold the next time the question is squarely presented, we simply note that the court has not yet reassessed the issue in light of recent Supreme Court decisions.

6. Even if we were to apply Florida law to the question before us, we note that appellee has not proven what the Florida law is. Appellee cites only two Florida state decisions for the proposition that an appeal does not become enforceable until affirmed by an appellate court. *Ledee v. State,* 342 So.2d 100 (Fla.App. 1977), is inapposite, since that case involved the propriety of revoking parole on the basis of a criminal conviction on which an appeal was

pending; the authority of *Ledee* is dubious in any event, since its result and reasoning were expressly disapproved in *Stevens v. State,* 390 So.2d 398 (Fla.App.1981). A similar infirmity afflicts appellee's reliance on *Joyner v. State,* 158 Fla. 806, 30 So.2d 304 (Fla.1947), in which the court declined to use a prior conviction as a basis for enhancing criminal punishment while the prior conviction was still being appealed. Quite clearly, the powerful considerations relevant to criminal proceedings—like presumption of innocence and deprivation of liberty—are not implicated in a decision to give effect to a *civil* judgment pending appeal.

Liberty Lobby also cites *In re Beach Resort Hotel Corp.,* 141 F.Supp. 537 (S.D.Fla.1956), in which a federal court declined to give *res judicata* effect to a Florida state court judgment pending appeal. But jurisdiction in the federal action was based on bankruptcy law, not diversity of citizenship, and the court did not purport to apply *Florida* law to the *res judicata* question before it. Rather, the court predicated its conclusion on the fact that the state court judgment was a *decree in equity. See id.* at 543. Accordingly, the court cited authorities that reiterate the old rule that an appeal in equity vacates a decree. *Id.* at 543 n. 6. In no respect can *Beach Resort Hotel* be considered authority for the proposition that Florida courts do not give *res judicata* effect to judgments pending appeal—especially judgments awarding *money damages.*

Our own research has been no less fruitless than appellee's; apparently, there *is* no Florida law on the question. Fortunately, our ruling that federal law governs spares us from embarking on the hazardous quest of predicting how the Florida Court of Appeals would resolve the issue if squarely presented to it. *See Daily v. Parker,* 152 F.2d 174, 177 (7th Cir. 1945) ("In the absence of a state court ruling our duty is tolerably clear. It is to decide, not avoid, the question.").

1054 (1932); *Fidelity Standard Life Insurance Co. v. First National Bank & Trust Co., supra,* 510 F.2d at 273 ("A case pending appeal is res judicata and entitled to full faith and credit unless and until reversed on appeal."); 1B Moore's Federal Practice, *supra,* ¶ 0.416[3], at 2252–54 ("The federal rule is that the pendency of an appeal does not suspend the operation of an otherwise final judgment as res judicata or collateral estoppel . . . .") (footnote omitted). Given the weight of such authority, it would appear that the district court's decision was clearly erroneous.

Undeterred, appellee interposes an argument based on 28 U.S.C. § 1963, which permits the registration of federal judgments in other districts. 28 U.S.C. § 1963 provides:

### Registration in other districts

A judgment in an action for the recovery of money or property now or hereafter entered in any district court *which has become final by appeal or expiration of time for appeal* may be registered in any other district by filing therein a certified copy of such judgment. A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner.

(Emphasis added). Appellee suggests that the "sound reasoning which underlay the congressional decision should also be applied to independent actions seeking to have a foreign judgment adopted and enforced." Brief for Appellee at 8. Unfortunately, appellee has not suggested, either in its brief or at oral argument, any *authority* that would permit a district court to dismiss an action on a foreign judgment pending appeal.

We recently had occasion to comment on the relationship between registration and independent actions as modes for enforcing judgments in the federal courts. In *In re Professional Air Traffic Controllers Organization (PATCO),* 699 F.2d 539 (D.C.Cir. 1983), we held that registration of a judgment under 28 U.S.C. § 1963 must await expiration of the time for appeal or, if a

timely notice of appeal is filed, final disposition of the appeal. In reaching that conclusion, we observed that

registration does not displace the traditional route to enforcement of a judgment outside the territorial limits of the court in which the judgment was rendered . . . .

*Id.* at 544. We expressly noted that "an independent action on a judgment may be commenced *in the face of a pending appeal.*" *Id.* (emphasis added). *Accord Urban Industries, Inc. v. Thevis,* 670 F.2d 981, 984–85 (11th Cir.1982); *Anthan v. Davey,* No. 81–0229, slip op. at 2 (D.D.C. Dec. 1, 1981). As Professor Moore has expressed it:

Section 1963 provides a cumulative remedy. It does not prevent a judgment creditor from bringing an independent action on his judgment. *And it may be advantageous to him to do this where the original judgment is not registrable due to the fact that it has not become final by appeal* or expiration of the time for appeal.

7B Moore's Federal Practice, *supra,* ¶ 1963 (emphasis added). *Accord Meridian Investing & Development Corp. v. Suncoast Highland Corp.,* 628 F.2d 370, 373 n. 5 (5th Cir.1980); *Slade v. Dickinson,* 82 F.Supp. 416, 418 (W.D.Mich.1949).

We are unable, therefore, to accept the suggestion of Liberty Lobby that "ordinary logic" based on 28 U.S.C. § 1963 can somehow permit a district judge to ignore settled federal law by dismissing Hunt's action because the Florida judgment is on appeal. Brief for Appellee at 8. Accordingly, the decision of the district court must be reversed.

This is not to say that the court in an independent action may not exercise discretion to *stay* that action because an appeal is pending from the judgment on which execution is sought. In fact, we acknowledged in our *PATCO* decision that such stays are often desirable in order to "avoid[ ] the complicated unravelling that might become necessary if a judgment . . . is overturned on direct review." 699 F.2d at 544–45

(footnotes omitted); *see id.* at 12 n. 18. It does not necessarily follow, however, that Liberty Lobby may prevail on a motion to stay Hunt's proceedings on remand. The Florida district court has already denied a similar motion for a stay pending appeal. *Hunt v. Liberty Lobby, Inc.,* No. 80–1121 (Mar. 30, 1982) (R.E., Ex. 1). We express no opinion on the merits of the motion on remand to stay proceedings. As to the possible collateral estoppel effect of the Florida court's ruling, see *McCord v. Bailey,* 636 F.2d 606, 608 (D.C.Cir.1980); *Nixon v. Richey,* 513 F.2d 430, 438 & n. 75 (D.C.Cir. 1975).

## III. CONCLUSION

The district court erred in dismissing Hunt's action to obtain a judgment in the district court for the District of Columbia on the civil judgment he had obtained in another federal district court. He is entitled to a determination of his suit to obtain a local judgment to support his attempt to levy execution on Liberty Lobby's assets in the District of Columbia. Accordingly, the order dismissing the action is vacated and the case is remanded for proceedings not inconsistent with this opinion.

*Judgment accordingly.*