Rose BORKOWSKI, Appellant,

v.

Diana E. SNOWDEN, Chairperson of the Alaska State Commission For Human Rights, and Lower Yukon School District, Appellees.

No. 6541.

Supreme Court of Alaska.

June 3, 1983.

---

Mark Andrews, Alaska Legal Services Corp., Bethel, for appellant.

Janalee R. Strandberg, Hedland, Fleischer & Friedman, Anchorage, for appellee Lower Yukon School Dist.

Carolyn E. Jones, Asst. Atty. Gen., Anchorage, and Wilson L. Condon, Atty. Gen., Juneau, for appellee Diana E. Snowden.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS and COMPTON, JJ.

## OPINION

COMPTON, Justice.

Appellant Rose Borkowski filed an employment discrimination complaint with the Alaska State Commission for Human Rights ("Commission"). The Commission dismissed the complaint after an investigation, finding no probable cause for the discrimination allegation. The superior court affirmed this dismissal. In her appeal before this court, Borkowski challenges three actions by the Commission: (1) the failure to provide Borkowski with the investigative record before the chairperson reviewed the investigator's findings; (2) the failure to issue detailed investigative findings; and (3) the failure to investigate possible retali-

atory discrimination. For the reasons stated below, we reverse and remand.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

In March 1978, Borkowski filed a complaint with the Commission, alleging that the Lower Yukon School District ("School District") denied her employment in the village of Emmonak during the 1977–78 school year on the basis of her race and religion. Borkowski is an Alaska Native and a Catholic.

The Commission conducted an investigation from the summer of 1978 to the spring of 1979, gathering information through interviews, interrogatories, and written documents. The investigator issued written findings in May 1980, concluding that there was no substantial evidence to support Borkowski's discrimination claim and recommending that her complaint be dismissed. These findings were approved by the Commission, which issued an order closing the case.

In July 1980, Borkowski filed an application for reconsideration by the chairperson, Appellee Diana Snowden. Borkowski also requested a copy of the investigative record. In August 1980, Snowden upheld the investigator's finding of no probable cause. Borkowski appealed to the superior court in September 1981. The court filed its memorandum decision and order in December 1981. The court held that the Commission's procedures and actions were not arbitrary or capricious and did not violate Borkowski's due process rights.[2] The court awarded attorney's fees of $500.00 each to Snow-

den (hereafter "Commission") and the School District, as well as $68.86 in costs to the School District. This appeal followed.

On appeal, Borkowski contends that the superior court's affirmance of the Commission's action can be reversed either under an administrative standard of review or under the due process clause of the fourteenth amendment to the United States Constitution and article I, section 7, of the Alaska Constitution.

## II. ACCESS TO THE INVESTIGATIVE RECORD

After Borkowski's complaint was dismissed, Borkowski filed an application for reconsideration as required by former 6 AAC 30.030(a).[3] That regulation, promulgated by the Commission as authorized by AS 18.80.050,[4] stated: "The complainant may apply to the chairperson for a reconsideration of the administrative dismissal of his or her complaint .... *Such an application must* be in writing, *state specifically the grounds upon which it is based* and be filed within 15 days from the receipt of the notice of disposition." (Emphasis added.) Borkowski contends that she could not comply with this provision because of the conclusory findings and because the Commission refused to grant access to the investigative record. The Commission contends that Borkowski in fact complied with 6 AAC 30.030(a) because she stated with "excruciating detail" in her six and one-half page application why she believed the investigation was inadequate. These details were "sufficiently explicit to advise the

---

1. Borkowski also challenges the superior court's assessment of attorney's fees and costs against her on the ground that her case fits within the public interest litigation exception to Appellate Rule 508(e). *See Thomas v. Bailey*, 611 P.2d 536, 539 (Alaska 1980); *Gilbert v. State*, 526 P.2d 1131, 1136 (Alaska 1974). We do not reach the public interest issue because under our decision Borkowski is the prevailing party in her appeal to the superior court, and thus we vacate the award of attorney's fees and costs against her.

2. The superior court also held that the Commission's decision to dismiss Borkowski's com-

plaint for lack of substantial evidence was not arbitrary or capricious. Borkowski does not contest this holding. Therefore, we will not discuss the evidence supporting the decision to dismiss Borkowski's complaint.

3. 6 AAC 30.030(a) was repealed on March 12, 1981. The substance of this provision now appears as 6 AAC 30.370(a).

4. AS 18.80.050 states: "The commission shall adopt procedural and substantive regulations necessary to implement this chapter [on the Commission for Human Rights]."

chairperson of Borkowski's objections when the chairperson examine[d] the entire record pursuant to 6 AAC 30.030(b)."

█ The issue for us to decide, therefore, is the correct interpretation of the phrase "state specifically" in 6 AAC 30.030(a). The "substitution of judgment" test is the appropriate standard for interpreting regulations, at least when the agency interpretation does not concern administrative expertise as to either complex subject matter or fundamental policy. *See Rose v. Commercial Fisheries Entry Commission,* 647 P.2d 154, 161 (Alaska 1981) (reasonable basis standard applicable when agency expertise involved); *Weaver Bros., Inc. v. Alaska Transportation Commission,* 588 P.2d 819, 821 (Alaska 1978) (same). In this case, the Commission did not expressly interpret what was meant by the phrase "state specifically." Therefore, we may use our independent judgment to interpret this phrase.

█ After a complainant submits an application for reconsideration, the chairperson is required to review the entire record and "may grant or deny the application for reconsideration. If the chairperson grants the application for reconsideration, he or she will remand the case, together with directions for further investigation, to the commission's staff." 6 AAC 30.070(b) (substantively identical to former 6 AAC 30.-030(b), in effect when this case arose). The only purpose we can discern behind requiring a complainant to "state specifically the grounds upon which [an application for reconsideration] is based," 6 AAC 30.030(a), is to aid the chairperson in his or her mandatory review of the investigative record under subparagraph (b).

Unlike a civil litigant who has access to an opponent's pleadings and evidence under the liberal rules of discovery, a complaint in a discrimination investigation, such as Borkowski, has no access to the alleged discriminator's defenses or evidence, at least at the point when she submits an application for reconsideration; all she knows is what she already stated in her written complaint. In this case, Borkowski's six and one-half page application was no more than a blind attempt at challenging the evidence on which the investigator based her conclusion that there was no probable cause to the discrimination claim. If Borkowski had been given access to the investigative record, she could have pointed out inconsistencies in the defense, offered legal arguments or added new evidence in rebuttal. This would have aided the chairperson's review of the record by enabling her to focus on and review certain evidence.

We do not find convincing the arguments raised by the Commission against allowing access to the record before an internal review. The Commission contends that those complainants not represented by counsel "would not be able to integrate the information contained in the investigative record and to articulate their factual and legal arguments as skillfully as a complainant who is represented by counsel." This argument implies that providing access to the record would give an unfair advantage to the represented group; however, because this is a non-adversarial proceeding and because one complainant's case has no bearing on another's case, any advantage a complainant with legal representation would gain by reviewing the record is irrelevant. It may be true that access to the investigative record would not always result in more articulate applications; in such cases, allowing access will neither help nor hinder the chairperson's independent review of the record. If the complainant is represented by counsel or is otherwise capable of articulating his or her arguments, access to the record could only facilitate the chairperson's review.

The Commission also contends that allowing access to the record would strain its limited resources; many complainants would want the record copied at no cost, and it would take time to prepare the record, which would include removing confidential documents. The delay that would be caused by these requests would make the Commission less efficient and hamper the goal of quickly resolving disputes.

Although it is true that some additional burden will be placed on the Commission in

providing access to the record, we think that the Commission's arguments are overstated. Under AS 18.80.115, enacted after Borkowski's request for consideration, investigative records must be made available to a complainant or respondent at least ten days before an administrative hearing or after a notice of failure of conciliation, or when a civil case is commenced. Because records must be made available at these times, the additional burden in making them available earlier will be minimal.

The Commission lastly contends that access to the record would "turn the request for reconsideration into a formal appellate hearing where complainant submits a copious brief that minutely challenges the investigative proceedings." Again, we disagree. If the Commission is concerned about receiving lengthy applications, it can easily establish a page limit. Furthermore, as stated earlier, we believe that a concise statement of the grounds for the application would help, rather than hinder, the chairperson's review of the record.[5]

---

5. Borkowski also contends that access to the investigative record is required in cases such as this as a matter of state and federal due process. We believe that a construction of 6 AAC 30.030(a) different from that made today would encounter serious constitutional objections because a complainant should be afforded some opportunity, however informally, to respond to the other party's version of the facts. However, because we interpret 6 AAC 30.030(a) to require access to the investigative record, we need not decide whether due process requires such a result.

6. The investigator's findings stated in part:

"Complainant alleges that Respondent discriminated against her by refusing to hire her on March 14, 1978 for any of the following positions; teacher aide, substitute teacher and clerical help. . . .

"Respondent denies all allegations of discrimination with respect to the Complainant. Respondent maintains that Complainant did not submit her application for work until January, 1978 and that Complainant did not live in Emmonak until that time. Respondent states that Complainant was hired as a substitute teacher in April, 1978.

"According to the principles of discrimination law, Complainant must first establish a set of facts that would raise an inference of race and/or religion discrimination before Respondent can be required to justify its actions.

## III.  DETAILED FINDINGS

As mentioned in the previous section, Borkowski contends that she could not "state specifically" the grounds upon which her application for reconsideration was based, as required by 6 AAC 30.030(a), because the investigator's written findings "left open nearly all the essential questions of fact which underlie [her] claim."[6] Borkowski also contends that the limited findings violated due process because they did not give her adequate notice of the investigator's decision.

The regulation concerning investigative findings stated in relevant part that "written *findings* on each issue [raised by the complaint] shall be issued to the respondent." 6 AAC 30.020(a)(5) (emphasis added).[7] The Commission and the School District both interpret the term "findings" to mean a statement of conclusion; if the Commission had meant to require the investigator to issue a legal and factual analysis

Complainant can do this by showing not only that she is an Alaska Native female who belongs to the Catholic church, but she suffered adverse employment action by not being hired. The evidence would also have to show that Respondent either applied standards or policies to her differently than it did to similarly situated White applicants or non-Catholics or that Respondent's policies were administered in a manner which had adverse impact on Alaska Natives and/or Catholics.

. . . .

"The evidence uncovered during the investigation indicates that Complainant had lived at Emmonak, Alaska since the 1977/78 school year began and had submitted an earlier application than the one dated January, 1978. Despite these facts, the evidence does not support Complainant's claim of race and religion discrimination. Most of the persons hired by the Respondent were Alaska Natives who were members of the Catholic church. Obviously, Complainant, O'Donnell and Nail had a conflict but there is insufficient evidence to establish that Complainant was treated unfairly because of her race and religion. Therefore, I find no probable cause to establish that Complainant was discriminated against because of her race and religion."

7. This regulation was repealed in 1981 and replaced by 6 AAC 30.330(a), which provides that the Commission "shall deliver a written determination . . . to the parties."

of the nature proposed by Borkowski, it would have used the term "findings of fact." This is the term used in 6 AAC 30.070, which required the hearing commissioner to issue written "findings of fact" and "conclusions of law" after an administrative hearing.

■ Our task consists of reviewing an administrative regulation and the agency's interpretation of that regulation. An agency's interpretation of a regulation is a question of law. As we stated in *United States v. RCA Alaska Communications, Inc.,* 597 P.2d 489, 498 (Alaska 1978), "Although an administrative agency's interpretation of its own rules is entitled to great weight, the ultimate resolution of a regulation's meaning is a question for the courts." (Footnotes omitted.) The appropriate standard of review for questions of law is the "substitution of judgment test," providing that the formulation of fundamental policy concerning particularized expertise of administrative personnel is not involved. *Wien Air Alaska v. Arant,* 592 P.2d 352, 356 (Alaska 1979); *Jager v. State,* 537 P.2d 1100, 1107 n. 23 (Alaska 1975).

■ We agree with the Commission's interpretation of the term "findings." The difference between findings that result from an investigation and findings of fact that result from an administrative hearing was explained by the Michigan Court of Appeals in *Martin v. Wayne County Civil Service Commission,* 16 Mich.App. 536, 168 N.W.2d 419, 421 (Mich.App.1969): "The word 'finding' denotes a 'result' by way of a conclusion of fact or of law. See generally, Black's Law Dictionary (4th ed.) p. 758. The word finding is distinguished from a finding of fact in that findings of fact are solely factual determinations devoid of legal conclusions." [8]

■ Having concluded that the term "findings" used in 6 AAC 30.020(a)(5) meant conclusory findings, the next issue is whether the regulation as so construed, in light of other relevant procedural provisions, amounts to a deprivation of due process. The due process clauses of the United States and Alaska Constitutions require that "deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865, 873 (1950). In *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 431, 102 S.Ct. 1148, 1155, 71 L.Ed.2d 265, 275 (1982), the United States Supreme Court held that a state-created administrative claim is a constitutionally protected property right. Therefore, before the Commission denies Borkowski's discrimination claim, she must be given "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present objections." *Mullane,* 339 U.S. at 314, 70 S.Ct. at 657, 94 L.Ed. at 873.

■ What process was due Borkowski depends on the " 'appropriate accommodation of the competing interests involved.' " *Logan,* 455 U.S. at 434, 102 S.Ct. at 1157, 71 L.Ed.2d at 277 (quoting *Goss v. Lopez,* 419 U.S. 565, 579, 95 S.Ct. 729, 738, 42 L.Ed.2d 725, 737 (1975)). In *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Supreme Court listed three distinct factors to be considered in this analysis:

[F]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens

---

8. Borkowski cites two cases to support her argument for requiring detailed findings at the investigative stage: *Fields v. Kodiak City Council,* 628 P.2d 927, 933–34 (Alaska 1981) and *Shenefield v. Sheridan County School* *Dist.,* 544 P.2d 870, 872 (Wyo.1976). These cases, however, concern the need for detailed findings of fact after an administrative hearing rather than after an investigation.

that the additional or substitute procedural requirement would entail.

424 U.S. at 335, 96 S.Ct. at 903, 47 L.Ed.2d at 33.[9]  After considering these factors in light of our conclusion that 6 AAC 30.030(a) grants Borkowski access to the full investigative record compiled by Snowden, we find that the total regulatory scheme does not violate due process guarantees.

### IV.  CONCLUSION

We hold that Borkowski is entitled to the investigative record but not to more detailed findings.[10]  Accordingly, we remand the case to the Commission to allow Borkowski to refile her application for reconsideration by the chairperson now that she has received the investigative record.  The affirmance of the investigator's findings by the chairperson and by the superior court is therefore vacated, as is the court's award of costs and attorney's fees.

REVERSED and REMANDED.

---

**9.** We first applied these factors in *City of Homer v. State,* 566 P.2d 1314, 1319 (Alaska 1977), and since then in *In Re Urie,* 617 P.2d 505, 508 (Alaska 1980), and *Hilbers v. Municipality of Anchorage,* 611 P.2d 31, 36 (Alaska 1980).

**10.** Borkowski also contends that the Commission's failure to investigate possible retaliatory discrimination against her or anyone else violated her due process rights.  This argument has no merit.  The complete absence of any showing by Borkowski that the School District retaliated against her or anyone else because of her complaint makes it clear that the Commission's decision not to investigate possible retaliation did not violate due process.