728 F.2d 1500
 234 U.S.App.D.C. 266
 ANSWERING SERVICE, INC., Appellant,
v.
Thomas J. EGAN, Executor of the Estate of Paul J. Rohrich,
Deceased, Appellee.
ANSWERING SERVICE, INC., Appellee,
v.
Thomas J. EGAN, Executor of the Estate of Paul J. Rohrich,
Deceased, Appellant.
 Nos. 82-1726, 82-1793.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Feb. 23, 1983.
Decided Feb. 28, 1984.
 
 Kenneth Wells Parkinson, Washington, D.C., with whom James R. Michal, Washington, D.C., was on brief, for appellant.
 William E. Fay, III, Washington, D.C., for appellee.
 Before MIKVA, EDWARDS, and SCALIA, Circuit Judges.
 Opinion for the Court filed by Circuit Judge MIKVA.
 Concurring opinion filed by Circuit Judge SCALIA.
 MIKVA, Circuit Judge:
 
 
 1
 The issue in this diversity action is whether appellant is barred by res judicata from bringing a claim for wrongful involvement in litigation against a defendant from which appellant previously sought, and was denied, indemnification. We hold that state law would require the two actions to be brought in separate suits and that a federal court sitting in diversity must honor that state policy. Accordingly, we reverse the judgment of the district court in this action and allow appellant to proceed to the merits of its wrongful-involvement-in-litigation claim.
 
 FACTS
 
 2
 The origins of the present action trace to 1976, when William Carmichael sued both the present appellant, Answering Service, Inc., and the present appellee, Thomas Egan, executor for Answering Services' deceased officer and director, Paul Rohrich, in the United States District Court for the District of Columbia. Carmichael alleged that Rohrich had committed fraud, breach of contract, or been negligent when he purported to issue to Carmichael ten shares of common stock in Answering Service. As an overissue, the shares were nonexistent and therefore void. Answering Service cross-claimed against Egan and asked that the Rohrich estate indemnify the corporation and hold it harmless for any loss resulting from a judgment in favor of Carmichael. Buried within that cross-claim, in boiler-plate form, was a request for "reasonable attorneys' fees, expenses, and all court costs."
 
 
 3
 The jury returned a verdict against Egan in the amount of $35,000 and absolved Answering Service of all liability. The trial judge then granted Egan's unopposed motion to dismiss Answering Service's cross-claim. After the parties filed appeals, cross-appeals, and protective cross-appeals in this court, we affirmed the jury's verdicts and the dismissal of Answering Service's indemnification claim by unpublished memorandum order. See Carmichael v. Egan, 672 F.2d 893 et al. (D.C.Cir.1981).
 
 
 4
 All this was prelude to the present action, in which Answering Service sued Egan in the United States District Court for the District of Columbia in an attempt to recover the attorneys' fees and costs it had expended in the earlier litigation. Answering Service grounded this claim on a cause of action created by D.C. law for "wrongful involvement in litigation." Among the essential elements of such a cause of action is that the plaintiff have been sued by a third party in a prior action and that the defendant have been found guilty in that action of some tortious act, the commission of which absolved the plaintiff from all liability in the earlier action. The relief sought in the current lawsuit is substantially the same as that asked for in the "boilerplate" claim for attorneys' fees in the earlier suit.
 
 
 5
 District Judge Pratt, who presided over the entire Carmichael-Egan-Answering Service litigation, dismissed Answering Service's wrongful-involvement-in-litigation action on the ground that that action could have been advanced in the earlier litigation because it "ar[ose] out of the same events" underlying Carmichael's suit and Answering Service's indemnification cross-claim. Answering Service, Inc. v. Egan, No. 82-0200, Memorandum Order at 3 (D.D.C. May 28, 1982). According to Judge Pratt, "nothing prevented [Answering Service] from adding as grounds for recovery wrongful involvement in litigation as well as indemnity." Id. at 4.
 
 
 6
 We conclude that state law did prevent Answering Service from being required by a federal court to assert its wrongful-involvement-in-litigation claim at the same time that it sought indemnification. We further conclude that, under Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the initial judgment in this action was required to be rendered consistently with that state law. In the absence of any indication that the first judgment was intended to flout this obligation, we assume that Erie was correctly followed. Accordingly, the judgment of the district court in this case, which is predicated on the opposite interpretation of the initial judgment, is reversed.
 
 DISCUSSION
 A. Threshold Issues
 
 7
 We address two preliminary issues before proceeding to determine whether claim preclusion doctrines bar the present wrongful-involvement-in-litigation action. First, Answering Service cannot be collaterally estopped from seeking attorneys' fees from Egan, for a brief review of the record demonstrates that the only issue necessarily decided in the dismissal of Answering Service's indemnification action was that the corporation had no legal liability to the plaintiff Carmichael in the underlying litigation. The request for attorneys' fees contained in Answering Service's indemnification cross-claim appears to have been contingent upon a finding that the corporation bore some liability to Carmichael:
 
 
 8
 WHEREFORE, the Defendant Answering Service, Inc., demands that the Estate of Paul J. Rohrich hold it harmless and indemnify it against all claims of whatever nature whatsoever by the plaintiff arising out of the allegation contained in the Amended Complaint herein, along with reasonable attorneys' fees, expenses, and all court costs.
 
 
 9
 Record Excerpts at 62 (Answer to Amended Complaint, Counterclaim, and Cross-Claim of Defendant, Answering Service, Inc.). Though the attorneys'-fees clause is not without ambiguity, we read that clause as intended to modify that which precedes it, rather than as an independent request; that is, if the plaintiff were found not to have any valid claims against Answering Service, Answering Service's request for attorneys' fees would be mooted.
 
 
 10
 This interpretation of the complaint is buttressed by the conduct of appellee Egan. Egan construed the complaint in precisely the manner outlined above when, after the jury absolved Answering Service of all liability, he moved to dismiss the entire indemnification cross-claim:
 
 
 11
 In view of the fact that the jury verdict was in favor of the co-defendant Answering Service, Inc. ... the cross-claims of these defendants against Thomas J. Egan, as executor, should be dismissed. Accordingly, since there is no basis for these cross-claims the court should enter an Order dismissing them.
 
 
 12
 Record Excerpts at 113 (emphasis added). Answering Service did not oppose this motion, and the trial judge granted it by order without any inquiry into whether Egan was an implied indemnitor of Answering Service. Id. at 114. Thus, the parties and court assumed throughout the litigation that an indemnification claim is to be dismissed when the claimant has suffered no legal liability. Because the issue of Answering Service's right to attorneys' fees in the absence of any legal liability on its part in the main litigation was never actually litigated, Answering Service cannot now be collaterally estopped from seeking those fees.
 
 
 13
 The second threshold issue we must dispose of concerns the application of the Federal Rules of Civil Procedure to this case. We conclude that the claim preclusion issue presented in this case cannot be resolved by reference to those Rules. Answering Service's initial cross-claim against Egan for indemnification was clearly permissive, see Fed.R.Civ.P. 13(g), and the mere bringing of that cross-claim did not, as far as the Rules are concerned, require Answering Service then to bring all other cross-claims it might have had against Egan which arose out of the transaction or occurrence underlying the indemnification claim. That this is so is evident from the compulsory counterclaim rule, which makes a claim compulsory only when it is asserted against an "opposing party." Fed.R.Civ.P. 13(a). Because Egan had filed no claim against Answering Service at the time the latter filed its indemnification cross-claim against him, Egan was not an "opposing party" to Answering Service when the indemnification cross-claim was filed. See, e.g., First Nat'l Bank in Dodge City v. Johnson County Nat'l Bank and Trust Co., 331 F.2d 325, 328 (10th Cir.1964) ("The very concept of a counterclaim presupposes the existence or assertion of a claim against the party filing it."). Just as nothing in the Rules requires plaintiffs to bring all related claims against a defendant at the same time, see 6 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE Sec. 1583 (1971), neither is a third-party plaintiff directly obligated by the Rules to do so. The compulsory counterclaim rule was therefore not triggered with respect to any other cross-claim Answering Service might have had against Egan.
 
 
 14
 Having disposed of these two points, we now proceed to consider the appropriate res judicata rule to apply to determine whether the present action is barred by Answering Service's failure to raise its wrongful-involvement claim at the same time that Answering Service sought indemnification from Egan.
 
 
 15
 B. Wrongful Involvement in Litigation in the District of Columbia
 
 
 16
 As a general rule, attorneys' fees and expenses incurred by a party in the successful litigation of a claim are not recoverable as damages absent a contractual or statutory basis for liability. See, e.g., Alyeska Pipeline Co. v. Wilderness Society, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); Sundown, Inc. v. Canal Square Associates, 390 A.2d 421, 430 & n. 12 (D.C.App.1978). A common-law exception to this rule is recognized in the District of Columbia, as it is in most other jurisdictions, for fees incurred in a suit with a third party when that suit itself can be proximately traced to the tortious actions of a defendant. See generally 25 C.J.S. Damages Sec. 50(e) (1966). In the District, this exception gives rise to a cause of action for "wrongful involvement in litigation," the three elements of which were recently set forth by the District's highest court:
 
 
 17
 (1) [t]he plaintiff must have incurred attorney's fees in the prosecution or defense of a prior action;
 
 
 18
 (2) the litigation ordinarily must have been with a third party and not with the defendant in the present action; and
 
 
 19
 (3) the plaintiff must have become involved in such litigation because of some tortious act of the defendant.
 
 
 20
 Safeway Stores, Inc. v. Chamberlain Protective Services, Inc., 451 A.2d 66, 69 (D.C.App.1982) (quoting Biddle v. Chatel, 421 A.2d 3, 7 (D.C.App.1980)) (emphasis added). Given this definition, it is clear that, had Answering Service not filed its cross-claim for indemnification, District of Columbia law would have required the wrongful-involvement-in-litigation count to be brought in a second action after the underlying litigation had been resolved.* As an obvious corrollary, District of Columbia res judicata principles would not have barred the second action.
 
 
 21
 The issue before us is more complex, however, for Answering Service did file, at the same time as the underlying action, its cross-claim for indemnification--a procedure which both the Federal and District of Columbia Rules of Civil Procedure permit. See Fed.R.Civ.P. 13(g); D.C.Sup.Ct.R.Civ.P. 13(g). We have found no cases in the District of Columbia courts that directly address the relationship between wrongful-involvement claims and indemnity actions, nor have the parties pointed us to any such cases. To decide whether District of Columbia preclusion law would bar a wrongful-involvement-in-litigation claim after dismissal of a prior indemnification action that sought attorneys' fees, we must therefore extrapolate from District of Columbia precedents on the nature of the wrongful-involvement tort.
 
 
 22
 The starting point for this inquiry is the District's requirement that, at least when no indemnification cross-claim is brought, a wrongful-involvement cause of action arises only after the underlying litigation has terminated. That requirement, we conclude, is best understood as an expression of substantive state policy concerns. State law definitions of when a claim matures help define the substantive nature of that claim. See, e.g., Rosemont Enterprises, Inc. v. Random House, Inc., 261 F.Supp. 691 (S.D.N.Y.1966) (ripeness of malicious prosecution state law claim for purposes of Federal Rule 13(a) determined by state law). In addition, because success in a wrongful-involvement action allows a plaintiff to shift his attorneys' fees, the cause of action for wrongful involvement in litigation stands opposed to the general American rule on fee shifting, see Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Requiring a separate action to be maintained for wrongful involvement in litigation may discourage the automatic filing of such suits as cross-claims or third-party claims in all litigation and may serve more specifically to weed out both frivolous and less significant wrongful-involvement claims. Moreover, the cause of action for wrongful involvement in litigation bears a strong resemblance to the cause of action for malicious prosecution, which is always pursued in the District of Columbia in a separate, subsequent action. See, e.g., Weisman v. Middleton, 390 A.2d 996 (D.C.App.1978). Indeed, the fundamental ingredient of a malicious prosecution suit, the requirement that there have been a prior judgment in the defendant's favor, is of the same cloth as the requirement that there have been "wrongful involvement" in a prior action. We cannot know the reason that the District of Columbia has chosen to require that wrongful-involvement suits be brought separately from the underlying litigation, but we do conclude on balance that that requirement is animated by substantive local policies.
 
 
 23
 We see no reason to alter that conclusion merely because, in this case, Answering Service cross-claimed for indemnification in the original action and thereby brought appellee into the underlying suit as a third-party defendant. Under these circumstances, we believe District of Columbia law would continue to require a wrongful-involvement-in-litigation claim to be brought separately from the underlying action. Two reasons lead us to this conclusion. First, while it is true that a wrongful-involvement claim is ordinarily subsequently brought against a third individual who is not party to the underlying litigation, the fact that, as in this case, the individual is already involved in the underlying litigation as a third-party defendant does not undermine the importance of the prior-judgment rule. Even in malicious prosecution actions, in which the defendant is similarly already in court as the plaintiff in the underlying action, the District of Columbia requires that a prior judgment be rendered before the tort suit can be brought. See, e.g., Weisman v. Middleton, 390 A.2d 996 (D.C.App.1978). Because the wrongful-involvement tort is a sibling of the malicious-prosecution action, we see no reason that the mere presence of a third-party defendant in the underlying action should trump the prior-judgment requirement in wrongful-involvement suits. The policies underlying that requirement remain in play.
 
 
 24
 Second, to the extent there is any District of Columbia precedent on point, it supports the view that the District requires wrongful-involvement claims to be brought separately from the underlying action even when a cross-claim for indemnification has been filed. In Safeway Stores, supra, 451 A.2d 66, plaintiff sued both Safeway and the company from which the store contracted for security services. Safeway cross-claimed against the company for indemnification, and after receiving it, filed a motion for attorneys' fees. The court ruled that, if the fee motion were treated as a wrongful-involvement-in-litigation claim, the claim would fail, because, inter alia, "Safeway did not incur attorney's fees in the defense of a prior action." Id. at 69 (emphasis added). Implicit in this statement is the rule that wrongful involvement actions cannot be brought at the same time as indemnification actions. While we acknowledge that the opinion is somewhat opaque on this point, and that the statement is formally dicta, we nonetheless view that statement as shedding some light on the District's view of the relationship between indemnification actions and wrongful-involvement claims. Raising of the former does not override the prior judgment requirement that defines the latter.
 
 
 25
 We conclude, therefore, that the same substantive policies which led the District to make a prior judgment one of the essential elements in a wrongful-involvement action carry over with equal force to a case in which a party asserts an indemnification cross-claim. As a result, we interpret local law to require that wrongful-involvement-in-litigation claims be brought separately from indemnification claims and from the underlying litigation.
 
 
 26
 Given that construction of local law, it is clear that Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), whose principle if not full constitutional underpinnings is applicable to the District of Columbia, Anchorage-Hynning & Co. v. Moringiello, 697 F.2d 356, 360-61 (D.C.Cir.1983), required that the initial judgment incorporate the District's rule that the underlying action be complete before a wrongful-involvement suit could be brought. As discussed above, that rule is an essential element in the District's definition of the tort, and it is the product of substantive state concerns. Accordingly, the district court in the initial action was obligated to apply it. As with most final judgments, however, the judgment in the initial action did not explicitly state which potential subsequent claims were merged into or barred by it. Under these circumstances, a second court confronted with a claim that the initial judgment precludes a second action should assume that the initial judgment was rendered consistently with the first federal diversity court's obligation to follow Erie.
 
 
 27
 Hunt v. Liberty Lobby, Inc., 707 F.2d 1493 (D.C.Cir.1983) is not to the contrary. In that case we held that federal res judicata law determines whether a prior federal diversity judgment that is still on appeal is to be given full res judicata effect. We then found that the pendency of an appeal does not diminish the res judicata effect of a final judgment. That decision is fully consistent with our analysis. Broader language in Hunt could be taken out of context to support the view that federal res judicata rules always govern in diversity. Were the decision read that broadly, however, it would conflict with Semler v. Psychiatric Institute of Washington, D.C., Inc., 575 F.2d 922 (D.C.Cir.1978), which held that, in diversity actions, state res judicata rules govern absent some overriding federal interest. To harmonize Hunt with Semler, we hold that Erie requires the use of all of a state's substantive law--including those aspects of its res judicata and preclusion law that can be characterized as substantive--whenever the cause of action at issue is state created. Had the district court in the case under review adhered to this principle, it would have permitted Answering Service's wrongful-involvement suit to proceed.
 
 
 28
 We note finally that, contrary to the concurrence's view, our analysis harmonizes, rather than severs, the Federal Rules of Civil Procedure and the federal common law of res judicata. While the Federal Rules are of course presumptively valid, Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), they must be interpreted consistently with Erie and with the limited mandate of the Rules Enabling Act, 28 U.S.C. Sec. 2072 (1976), which authorizes only Federal Rules that relate to "practice and procedure." See, e.g., Palmer v. Hoffman, 318 U.S. 109, 117, 63 S.Ct. 477, 482, 87 L.Ed. 645 (1943); Hanna, 380 U.S. at 470 n. 12, 85 S.Ct. at 1143 n. 12. For example, the "transaction or occurrence" test of a Rule such as 13(a) may at times be defined by reference to state law--as, for instance, when a state's definition of the relationship between two claims is clearly a product of substantive state concerns. In such circumstances, the Federal Rules will be construed to incorporate that definition. See generally 3 MOORE'S FEDERAL PRACTICE p 13.02 at p. 13-17 (1983).
 
 CONCLUSION
 
 29
 We sympathize with the trial judge's impulse to put "this case finally to rest." Answering Service, Inc. v. Egan, No. 82-0200, Memorandum Order at 4 (D.D.C. May 28, 1982). But that impulse cannot be allowed to eclipse the substantive policy of the District of Columbia to allow third parties, who have been dragged into litigation by the tortious conduct of others, to recover in a subsequent action the costs of defending themselves. Accordingly, we reverse the judgment below on the res judicata issue and remand the case for a determination of whether Answering Service has met the requirements of a wrongful-involvement-in-litigation claim.
 
 
 30
 In response to Answering Service's filing of a wrongful-involvement claim, Egan counterclaimed for malicious prosecution. Egan appeals in No. 82-1793 from the district court's dismissal of this counterclaim. Because we find no merit to Egan's contentions in No. 82-1793, we affirm that part of the district court's judgment which dismissed Egan's malicious prosecution counterclaim.
 
 
 31
 It is so ordered.
 
 SCALIA, Circuit Judge, concurring in result:
 
 32
 I concur separately because I have doubts about the validity of the majority's Erie analysis and think it unnecessary to reach that issue.
 
 
 33
 Although the test for the validity of a Federal Rule of Civil Procedure is not identical with the test of what is procedural for Erie purposes, see Hanna v. Plumer, 380 U.S. 460, 469-74, 85 S.Ct. 1136, 1142-45, 14 L.Ed.2d 8 (1965), one surely should not lightly denominate substantive for Erie purposes a matter closely allied to, if not inextricable from, what is specifically treated in the Federal Rules. Federal Rules of Civil Procedure 13, 14 and 18 address in some detail the claims, cross-claims and counterclaims that may be joined to the original claim in a given action, and the counterclaims that must be joined on pain of being lost. It seems to me strange for the closely related issue of which claims must be joined with a cross-claim to be governed by nonfederal rules. The result of such an approach is that--unless, for the first time, one of the Federal Rules is to be declared invalid--state law may govern the necessity of pleading a wrongful-involvement-in-litigation claim if, as here, the issue is whether the claim had to be joined with another claim; whereas if the issue is whether the claim must be brought as a counterclaim (for example, if in the present suit co-defendant Egan had first filed a cross-claim against Answering Service), federal law will govern.[1] Because such inconsistent treatment seems to me pointless and disruptive, I am predisposed to believe that the mandatory joinder of one claim to another is a federal matter under Erie, just as the mandatory filing of a counterclaim is a federal matter under the Federal Rules.
 
 
 34
 I do not find persuasive the majority's argument that substantive policies underlie the District's nonjoinder rule. The policies that the majority speculates upon--"discourag[ing] the automatic filing of such suits as cross-claims or third-party claims in all litigation," and "weed[ing] out both frivolous and less significant wrongful-involvement claims," Maj. op. at 1504--seem to me directed at conserving judicial resources and preventing use of the courts as instruments of harassment. These objectives pertain to judicial administration, are classically "procedural" and the business of the forum court. See generally RESTATEMENT (SECOND) OF CONFLICT OF LAWS Sec. 122 (1971).
 
 
 35
 In any event, under the view I take of this case it is unnecessary to reach the Erie issue, since there is no conflict between District and federal law. Where that is so, federal courts sitting in diversity cases frequently do not decide which of the identical rules (the state or the federal) they are applying. See, e.g., Berner v. British Commonwealth Pacific Airlines, Ltd., 346 F.2d 532, 539-41 (2d Cir.1965), cert. denied, 382 U.S. 983, 86 S.Ct. 559, 15 L.Ed.2d 472 (1966). That course is all the more desirable here, since the parties have not briefed or argued the Erie issue.
 
 
 36
 As a general rule, under federal law a plaintiff does not lose a claim that has not yet matured because of failure to join it with another claim arising out of the same transaction or occurrence. See Lawlor v. National Screen Service, 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1955). A claim which depends for its success on the outcome of a lawsuit does not mature until completion of that lawsuit, and therefore is not lost by reason of failure to plead it as an original claim or compulsory counterclaim in that litigation. See Hall v. General Motors Corp., 647 F.2d 175, 184 (D.C.Cir.1980) (counterclaims for contribution and indemnity). There is no reason to adopt a different rule with regard to a cross-claim. Cf. Hall v. General Motors Corp., supra, which involved a counterclaim to a cross-claim.
 
 
 37
 The only element that could conceivably produce a different result in the present case is the fact that the claim to which the unmatured claim (the wrongful-involvement-in-litigation claim) was not joined was itself an unmatured claim (the indemnification claim), similarly contingent upon the outcome of the underlying litigation. I do not see why that should make any difference. The exemption of unmatured claims from the compulsory joinder requirement is evidently based largely if not entirely upon considerations of judicial economy: An unmatured claim may never mature, so a court may never have to decide it. If the prospective claimant himself does not consider it imminent enough to include in the case, the rules of pleading should hardly compel him to do so. Moreover, rules would presumably have to be devised, and litigation conducted, concerning how close to mature or how imminent an unmatured claim must be to trigger mandatory joinder. (It is inconceivable that the liberal standard of ripeness applied to determine availability of declaratory judgment would be adopted for the quite different purpose of compelling joinder.) None of these considerations urging against a mandatory joinder rule disappears merely because one unmatured claim has already been brought.
 
 
 38
 I conclude, therefore, that under federal procedural law the wrongful-involvement-in-litigation claim did not have to be joined in the earlier litigation and could be brought in a later suit. Since the District of Columbia courts, whether for substantive or procedural reasons, would reach the same result, there is no real conflict to be resolved. Whether federal or District law governs, the district court's judgment holding the claim barred must be reversed.
 
 
 
 *
 It is true that many jurisdictions are moving away from making a prior judgment one of the essential elements of a wrongful-involvement suit. See, e.g., Prentice v. North American Title Guaranty Corp., 59 Cal.2d 618, 621, 30 Cal.Rptr. 821, 823, 381 P.2d 645, 647 (1963) (en banc). We also recognize that, in its two most recent forays into this terrain, the District of Columbia Court of Appeals has suggested that the District too might in time dispense with that requirement. See Safeway Stores, 451 A.2d at 69; Biddle, 421 A.2d at 8. Yet while we acknowledge our responsibility as a diversity court to embrace "developing lines of [state] authorities," Bernhardt v. Polygraphic Co., 350 U.S. 198, 205, 76 S.Ct. 273, 277, 100 L.Ed. 199 (1956), we do not believe the present trend in the District's law points so ineluctably in one direction that we are warranted in departing from the current black-letter statement of that law contained in Safeway Stores and quoted in text at p. 1503. Accordingly, we assume that in the District of Columbia a prior judgment remains one of the essential elements to a wrongful-involvement-in-litigation claim
 
 
 [1]
 Fed.R.Civ.P. 13(a) provides: "A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction."