**Jo Ann MILLER, Appellant and Cross–Appellee,**

v.

**LHKM, a Partnership of Loren H. Lounsbury, Clarence A. Herschbach and Darl W. Kvasager, Appellee and Cross–Appellant.**

Nos. S–1847, S–1867.

Supreme Court of Alaska.

March 25, 1988.

As Amended April 7, 1988.

Michael W. Dundy, Hartig, Rhodes, Norman, Mahoney & Edwards, Anchorage, for appellant and cross-appellee.

Suzanne C. Pestinger, Daniel Westerburg, Birch, Horton, Bittner, Pestinger and Anderson, Anchorage, for appellee and cross-appellant.

## OPINION

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

COMPTON, Justice.

This controversy arises from the termination of a land development joint venture between LHKM, a partnership of surveyors and engineers, and Jo Ann Miller. It concerns an agreement by LHKM to pave a road. The principal issue on appeal is whether Miller is barred from litigating LHKM's alleged breach of the agreement by not raising the paving claim as a compulsory counterclaim in earlier litigation involving the parties as co-defendants. The trial court entered judgment on behalf of LHKM. We affirm.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

LHKM, a partnership consisting of Loren H. Lounsbury, Clarence A. Herschbach and Darl W. Kvasager, was formed in 1975 to develop land. LHKM entered into two land development joint venture agreements with Jo Ann Miller and the Miller family. These agreements provided that Miller

---

1. Subsequent to approval of the opinion of the court, but prior to its publication, the parties submitted for the court's approval a stipulation for dismissal of the appeal with prejudice. The stipulation has been approved. However, because of the importance of the procedural issues addressed we have concluded that the opinion should be published.

would contribute over 800 acres of land in the Potter Creek area. LHKM would contribute other parcels of land as well as provide engineering and survey services.

Shortly thereafter, the parties decided to terminate the ventures. On February 24, 1977 they entered into an "Agreement to Purchase" which provided that Miller would purchase approximately 888 acres covered by the joint ventures. The agreement stated that "Sellers and Buyer agree that 60 days will be allowed from March 2, 1977 for search of title and completion of purchase documents." On April 29 and 30, 1977, Miller and LHKM signed 12 documents consisting of five "agreements" and seven deeds. These documents implemented the terms of the February 24 "Agreement to Purchase." One of the agreements was a note executed by Miller in favor of LHKM and secured by a deed of trust on part of the 800 acres covered by the joint ventures.

Another of these agreements is the subject of this action. LHKM agreed to build a paved road through Villages Tideview Subdivision (Tideview) within two years of April 30, 1977.[2] LHKM built but never paved the Tideview road.

To date the parties have been involved in three lawsuits relating to the buy-out transaction. The suit that is relevant to this case was an interpleader action which arose from the following facts. In 1979 Miller sold a large parcel of land to Viewpoint Ventures (Viewpoint). LHKM and Miller amended the original deed of trust and deed of trust note to allow for a partial release of property. They also executed new collection instructions to their escrow agent, Lawyers Title Insurance Agency (Lawyers Title). In January 1984, a dispute developed between Miller and LHKM regarding the partial release of property to Viewpoint under the new instructions. As a result, Lawyers Title filed an interpleader complaint naming both Miller and LHKM as defendants. The complaint asked for resolution of the proper allocation of funds and an interpretation of the partial release clause in the amended deed of trust.

LHKM answered the complaint, counterclaimed against Lawyers Title seeking payment of the funds held in escrow, and cross-claimed against Miller. Count one of the cross-claim sought payment of the money held in escrow and alleged that Miller had wrongfully instructed Lawyers Title not to release the funds to LHKM. In the second count LHKM alleged that Miller had wrongfully failed to release certain properties to LHKM in accordance with the terms of one of the April 1977 closing documents.

Miller answered the Lawyers Title complaint and asserted a cross-claim against LHKM solely on the dispute involving the 1979 collection instructions. She did not answer the second count of LHKM's cross-claim regarding the release of properties.

The parties ultimately settled the dispute and they stipulated to a dismissal with prejudice. The stipulation resolved all issues in the case including the cross-claims. Two months later Miller filed the complaint in this action alleging that LHKM had breached its agreement to construct a paved road in Tideview.[3] LHKM moved for summary judgment arguing, *inter alia*, that the paving claim should have been raised as a compulsory counterclaim in the Lawyers Title interpleader case.[4] The trial court

---

2. At the time Miller did not own any land in Tideview, however, she envisioned developing a road system on her property, gaining access across a parcel of land managed by the Federal Bureau of Land Management and ultimately connecting with the Old Seward Highway via Tideview Road.

    In 1979 Miller sold a large portion of the Miller properties to Viewpoint Ventures. Viewpoint provided access to its upper hillside properties by constructing a long winding road up from the New Seward Highway thereby obviating the need to connect with Tideview Road.

3. Miller's counsel on appeal were not trial counsel until after the complaint regarding the paving claim was filed.

4. LHKM also argued that Miller's paving claim should have been raised in either of the two earlier cases and was therefore barred by the doctrine of res judicata and that Miller violated the rule against splitting a cause of action and laches. LHKM has cross-appealed on these issues. However, because of our disposition of the case we need not address them.

granted summary judgment, reasoning that under Alaska Civil Rule 13 Miller should have brought the paving claim as a cross-claim in the interpleader action. This appeal followed.

## II. DISCUSSION

### A. Compulsory Counterclaim.

■ This case involves an interpretation of Alaska Civil Rule 13.[5] *See* Alaska R.Civ.P. 13. LHKM argues that rule 13(a) and 13(g) should be read together resulting in some cross-claims becoming compulsory. LHKM argues and the trial court agreed that, although under Civil Rule 13(g) a defendant is not required to assert a cross-claim against a co-defendant, if he does the co-defendant *must*, under Rule 13(a), raise in his or her answer to the cross-claim any counterclaim he or she has against the cross-claimant defendant if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim. Thus, LHKM argues that Miller's paving claim was, in effect, a compulsory counterclaim in the Lawyers Title interpleader case. Because Miller did not bring her claim it is barred by Civil Rule 13(a).

Our analysis begins with the rule itself. Civil Rule 13(a) provides:

(a) *Compulsory Counterclaims.* A *pleading* shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any *opposing party*, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim.... (Emphasis added).

By its terms rule 13(a) applies to pleadings between opposing parties. Miller argues that she was not required to bring her paving claim in the Lawyers Title interpleader case because she and LHKM were co-parties and not opposing parties for the purposes of Rule 13. Miller contends that LHKM's cross-claim regarding the 1977 transaction and her obligation to respond is

governed by rule 13(g), cross-claims, *not* rule 13(a).

Alaska Civil Rule 13(g) provides:

(g) *Cross–Claim Against Co–Party.* A pleading *may* state as a cross-claim any claim by one party against a co-party arising out of the transaction or occurrence that is the subject matter either of the original action or of a counterclaim therein or relating to any property that is the subject matter of the original action.... (Emphasis added).

By its terms rule 13(g) applies to pleadings between co-parties. In contrast to subsection (a), this subsection is phrased permissively. Miller argues that bringing a cross-claim is always permissive. *See Augustin v. Mughal*, 521 F.2d 1215, 1216 (8th Cir.1975) (a party to an action having a claim in the nature of a cross-claim has the option to pursue it in an independent action); *see also* 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1431, at 164–65 (1971). Therefore, she concludes that she was not required to bring the paving claim as a cross-claim in the Lawyers Title case.

We agree with Miller that LHKM's initial decision to bring a cross-claim is permissive. However, once LHKM asserted a cross-claim, LHKM and Miller became opposing parties regarding that claim. At that point Miller fell within the compulsory counterclaim rule of 13(a). As such, she was required to raise in her answer to the cross-claim any counterclaim she had against LHKM if it arose out of the transaction or occurrence that was the subject matter of LHKM's claim.

In reaching this result we are persuaded by the reasoning of the Kansas Supreme Court in *Mohr v. State Bank of Stanley*, 241 Kan. 42, 734 P.2d 1071 (1987). *Mohr* held that one who has a counterclaim arising out of the transaction which is the subject matter of a cross-claim against him must assert the counterclaim or lose it. *Id.* at 1079.

---

5. The superior court's ruling on LHKM's Motion for Summary Judgment was on a pure question of law over which this court can exercise its independent judgment. *Borkowski v. Snowden*, 665 P.2d 22, 27 (Alaska 1983).

*Mohr* involved a claim of conversion against State Bank of Stanley. Gene Mohr owned a partnership, Mohr–Loyd Leasing, with James Loyd. *Id.* at 1074–75. State Bank agreed to loan money to Mohr–Loyd Leasing. State Bank issued two checks for the loan but the partnership never received the money. Loyd embezzled the funds by depositing the checks in another account at State Bank. *Id.* at 1078. Later the Johnson County Airport Commission filed suit against State Bank, Mohr, Loyd and Mohr–Loyd Leasing over the loan proceeds. State Bank filed a cross-claim against Mohr seeking recovery on the loans to Mohr–Loyd Leasing. Mohr did not file a claim against the bank arising out of the loans and the bank's participation in Loyd's embezzlement.

State Bank argued that Mohr's claim against the bank regarding the loan should be barred because it was a compulsory counterclaim in the Johnson County Airport case. *Id.* Even though that claim would have been a cross-claim, the Kansas Supreme Court agreed that it should have been raised in the earlier suit. The court expressly rejected the argument that cross-claims are always permissive. *Id.* at 1079. It reasoned that

> While the claim would have been against a codefendant, Mohr and the Bank were adverse parties in the Airport case, and Mohr's claim arose out of the transaction which formed the basis of the Bank's cross-claim against him.

*Id.* Therefore, even though the claim was between co-defendants, given the adversity between the parties the terms of the compulsory counterclaim rule took effect. *Id.*

Professor Moore reaches the same conclusion in his treatise. In order to reach his conclusion Professor Moore reasons that cross-claimants become opposing parties:

> [A]ssume that A and B sue X on a contract claim; and X pleads a permissive counterclaim for damages caused by the negligence of A and B. A may plead a cross-claim against B to the effect that B is liable to A for all or part of X's claim.

A's claim is related to X's counterclaim, but it has certain characteristics of an independent claim, since it in no way affects X. If B, now an *opposing* party to A on the cross-claim also has a claim against A, which arises out of the transaction or occurrence that is the subject matter of A's cross-claim against him, such a claim is a counterclaim within subdivision (a) and must be pleaded, unless within an exception thereto.

3 J. Moore, *Moore's Federal Practice,* ¶ 13.34[1], at 13–209–10 (2d ed. 1985) (footnotes omitted; emphasis in the original).[6] *Accord Answering Service, Inc. v. Egan,* 728 F.2d 1500 (D.C.Cir.1984) (had one co-defendant filed a cross-claim, the other co-defendant would have been obligated to respond to an opposing party under the compulsory counterclaim rule); *Hall v. General Motors Corp.,* 647 F.2d 175, 184 (D.C. Cir.1980) (approved of Professor Moore's example stating "[i]f matured claims were involved, an answering cross-claim might well be compulsory").

We are persuaded by *Mohr* and Professor Moore's analysis because it comports with the language of Civil Rule 13(a). As Judge Souter reasoned:

> Civil Rule 13–A does not deal simply with the requirement that a person filing an answer to a complaint has a duty to present compulsory counter-claims. The rule is not drafted that narrowly. It's drafted broadly. A pleading ... it doesn't say answer, it says a pleading, shall state as a counter-claim any claim which at the time of serving the pleading, the pleader—it doesn't say the defendant, it says the pleader—has against any opposing party—it doesn't say against the plaintiff—if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim, ....

■ We agree that rule 13(a) does not limit the inclusion of a counterclaim to answers or against plaintiffs. *See Mohr,* 734 P.2d at 1079. We conclude that when one defendant asserts a cross-claim against the

**6.** *See also* 3 Moore, ¶ 13.12[1], at 13–58.

other, the defendants become opposing parties as contemplated by the rule.

Our decision requiring the cross-claim "defendant" to raise any claim arising out of the same transaction or occurrence as the cross-claim will further the goal of judicial economy by avoiding multiple suits and encouraging the determination of the entire controversy among the parties before the court with a minimum of procedural steps. Further, because the initial cross-claim must arise out of the transaction or occurrence that is the subject matter of the original action, there is little danger of the action becoming overly complex. In the same vein, if the litigation does become unwieldy the court may order separate trials under Civil Rule 42(b). *See* 6 Wright & Miller, § 1431, at 161.

### B. Transaction or Occurrence Test.

█ Miller argues that even if we decide that certain cross-claims are compulsory, the paving claim is not such a claim because it does not arise out of the same transaction or occurrence that is the subject matter of the opposing party's claim. *See* Alaska R.Civ.P. 13(a).

LHKM's cross-claim is the "opposing claim." LHKM's cross-claim must, in and of itself, satisfy the transaction or occurrence test pursuant to Civil Rule 13(g). Thus, LHKM's cross-claim must be sufficiently related to the Lawyers Title interpleader claim, and Miller's paving claim must, in turn, be sufficiently related to LHKM's cross-claim.

Miller argues that the second Count of LHKM's cross-claim does not arise out of the same transaction or occurrence as the interpleader case. The interpleader claim involved land sold to Viewpoint, the 1979 collection agreement and other amended documents. In contrast, Miller argues, the second Count concerns a separate tract of land, a separate release clause and the 1977 documents. LHKM argues that the second Count was procedurally appropriate because the entire interpleader case "generally concerned Miller's buy out of LHKM's interest in the joint ventures and the various agreements implementing it."

Whether LHKM's cross-claim is sufficiently related to the interpleader claim, and whether Miller's paving claim is sufficiently related to the cross-claim so as to make it compulsory, turns on how broadly we construe "transaction or occurrence." We have not yet construed Civil Rule 13(a)'s transaction or occurrence language. However, this language is substantially similar to the test used for res judicata. In *Tolstrup v. Miller,* 726 P.2d 1304, 1307 (Alaska 1986), we said "to decide whether res judicata precludes Tolstrup's foreclosure, we must determine whether the underlying claim is the same as, or *transactionally connected with,* the claim extinguished by stipulation in the earlier lawsuit." (Emphasis added).

Our position in *Tolstrup* is supported by the Restatement (Second) of Judgments § 24(1) (1981) definition of a claim for res judicata purposes: "all rights of the plaintiff to remedies against the defendant arising out of the same transaction or series of connected transactions." In practice this definition is no different from Civil Rule 13(a)'s transaction or occurrence test. 1B Moore, ¶ 0.410[1], at 360.

The Restatement lists factors useful in determining whether various claims arise from the same transaction. These include whether the facts are related in time, space, origin, or motivation; whether they form a convenient trial unit; and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage. Restatement (Second) of Judgments § 24(2) (1981).

Applying the Restatement's transaction test we conclude that Miller's paving claim arose from the same transaction as LHKM's cross-claim as well as the interpleader case. The facts are related in time and origin. The interpleader case and the paving case would form a convenient trial unit. Both claims would involve similar testimony concerning the intent of the parties when they entered into the 1977 agreements, the same exhibits and the same parties.

The first Count of LHKM's cross-claim concerned an interpretation of a partial release clause in a deed of trust. The original deed of trust was part of the April 1977 closing papers. It was amended in 1979 to account for Miller's sale of some property to Viewpoint. The second Count of LHKM's cross-claim concerned Miller's alleged breach of two assumption agreements signed by Miller in April 1977. These agreements were also part of the closing papers signed by Miller to implement the buy-out agreement. Thus, both Counts arose from the same transaction as the original interpleader action. *See United California Bank v. Fadel*, 482 F.2d 274 (9th Cir.1973). Similarly Miller's road paving agreement was part of the April 1977 buy-out transaction. Therefore, it arose from the same transaction as did both Counts of LHKM's cross-claim.

Miller argues that the testimony necessary to resolve the interpleader case would have been limited to circumstances surrounding the 1979 documents and money paid into escrow pursuant to that agreement. In contrast, she continues, the paving claim would include 1977 documents "together with testimony about the costs of building the road and even the title and land problems." Miller's argument is unpersuasive. If the paving claim went to trial, although Miller would prefer that the evidence be kept to the question of damages, there is no doubt that LHKM would defend its failure to pave in the context of the entire 1977 transaction.

## III.  ATTORNEY'S FEES

As the prevailing party at the trial level LHKM requested an award of $34,000 in fees. The court awarded $6,800. Because no money judgment was obtained by LHKM in the action, attorney's fees should have been "fixed by the court in its discretion in a reasonable amount." Alaska R.Civ.P. 82(a)(1). LHKM argues that it should have been awarded all of its fees because 1) the fees were reasonable; 2) LHKM's exposure warranted the fees; 3) Miller did not act in good faith; and 4) as a matter of policy in res judicata cases full attorney's fees should be awarded. Miller does not contest reasonableness or exposure; she argues that she acted in good faith.

A finding of bad faith requires that the claim presented was frivolous. *Malvo v. J.C. Penney Co.*, 512 P.2d 575, 588 (Alaska 1973). The trial court specifically found that the claims were "colorably valid [and] that Miller had litigated them in good faith and in a non-vexatious manner." Moreover, in the oral order on summary judgment the trial court concluded most of the issues raised by LHKM were "clearly invalid," including laches and res judicata. At trial LHKM prevailed only on the narrow issue of compulsory counterclaims. The purpose of the attorney's fee rule is to partially compensate the prevailing party, not to penalize a party for litigating a good faith claim. *Malvo*, 512 P.2d at 588.

The standard for review on an award of attorney's fees is whether the trial court abused its discretion. *Steenmeyer Corp. v. Mortenson–Neal*, 731 P.2d 1221 (Alaska 1987). Judge Souter took into account "the actual fees expended, the relatively non-complex issues involved and the brief duration of the case." There is no evidence of abuse of discretion.

## IV.  CONCLUSION

The decision of the superior court is AFFIRMED.

RABINOWITZ, C.J., concurs.

RABINOWITZ, Chief Justice, concurring.

But for the fact that prior to publication of the court's opinion in this appeal the parties advised that the matter had been settled, I would have filed a dissenting opinion. Although I can agree with the court's analysis when co-parties become opposing parties for purposes of Civil Rule 13(a), I do not believe that this construction is facially apparent. Thus I would have held, pursuant to Civil Rule 94, that application of Civil Rule 13(a) to Miller should have been dispensed with to avoid an injus-

tice.[1]  For, as indicated previously, a reading of Civil Rule 13(a) and (g) would not invariably lead the practitioners to the conclusion that, in the procedural context of this case, Miller was compelled to file a counterclaim under Rule 13(a).[2]

---

**1.** Civil Rule 94 provides:

These rules are designed to facilitate business and advance justice.  They may be relaxed or dispensed with by the court in any case where it shall be manifest to the court that a strict ad[h]erence to them will work injustice.

**2.** I note that in *Mohr v. State Bank of Stanley,* 734 P.2d 1071, 1079 (Kan.1987), the court said in part:

Here, Mohr had a complusory counterclaim to the Bank's cross-claim in the Airport case. *He was advised of that by the trial judge in this case almost a month before the Airport case was dismissed.*
(Emphasis added.)  Furthermore, neither *Answering Service, Inc. v. Egan,* 728 F.2d 1500 (D.C.Cir.1984), nor *Hall v. General Motors Corp.,* 647 F.2d 175 (D.C.Cir.1980), furnished clear precedent for the court's construction of Civil Rule 13(a).